Robinson, J.
 

 The major question in this case is whether the Court of Appeals, whose jurisdiction in a criminal case to review upon the weight of the evidence has been invoked, is required to weigh such evidence by the same rule that the jury is required to weigh it, or is only required to find that there was some evidence tending to prove the essential facts necessary to support the verdict.
 

 The plaintiff in error, Gilbert Cooper, hereinafter referred to as the defendant, was indicted, tried, and convicted of murder in the first degree, and, upon a proceeding in error, wherein there was a specification that the verdict was against the weight of the evidence, the Court of Appeals affirmed the conviction.
 

 
 *563
 
 The question first arises out of the opinion announced by the Court of Appeals, unanimously concurred in, wherein it several times quite definitely stated that it was in doubt whether the state proved the element of deliberation and premeditation necessary to constitute the homicide murder in the first degree, and stated that a verdict of second degree murder would more nearly have fitted the situation, and affirmed the judgment because it found that there was “some evidence” tending to prove deliberation and premeditation, basing its affirmance upon the authority of the language of the syllabus in the case of
 
 Breese
 
 v.
 
 State,
 
 12 Ohio St., 146, 80 Am. Dec., 340, as follows:
 

 “A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony.”
 

 However because of the fact that the doubt expressed in the opinion does not appear in the journal entry, it becomes necessary for this court to examine the evidence to ascertain whether the Court of Appeals, in reviewing the evidence, in fact applied the correct rule, notwithstanding its apparent statement to the contrary in its opinion.
 

 First, considering the evidence as a whole, there was evidence to the effect that the defendant and the deceased and the deceased’s father had fallen out over their respective trapping activities, a year or so prior to the date of the homicide, and that they were thereafter not on speaking terms. There was evidence by the witness Leach that the defendant, shortly prior to the date of the homicide, had said
 
 *564
 
 that some one was stealing his traps, and “the first warm night that comes along, why I’ll go down and I’ll put them out. And I’ll just throw my old pump gun on my arm and go down and get him.” There was evidence that three shots were fired in rapid succession, and there was the evidence of the defendant, by his written confession and his testimony upon the stand, that the deceased was down at the time of the firing of the third shot, which, collectively and unqualified by other evidence, would support a finding of deliberation and premeditation beyond a reasonable doubt.
 

 The case, however, was unusual, in that there was little conflict in the evidence upon any essential fact. There was a conflict in the evidence of the threat, testified to by Leach and wholly denied by the defendant, which was of little importance, for the reasons hereinafter set forth. There was a conflict in the evidence as to whether the deceased carried the club, or whether his father carried it, which was unimportant, for the reason that the evidence clearly proves that not only was the deceased bent upon doing the defendant serious bodily harm, but that he was physically so superior to the defendant that he was quite able to do so without the aid of a club, all of which was known to the defendant. There was an unimportant variance between the description of the route of the flight of the defendant prior to the shooting, as detailed by the defendant and as detailed by the father of the deceased. There was no other conflict in the evidence that we have been able to discover.
 

 The whole evidence was to the effect that the deceased and his father, in broad daylight, finding the
 
 *565
 
 defendant examining or taking up some traps along Massie creek, where both the deceased and the defendant had traps out, began a menacing pursuit which continued until the instant of the shooting; that the defendant fled for a distance of 700 yards and crossed three barbed wire fences; that the pursuit by the deceased was so furious that he threw off his coat, and that his father, an active farmer 55 years of age, had at the time of the shooting, by reason of exhaustion, fallen behind the deceased a distance of 178 yards, and the deceased, starting 300 yards in the rear of the defendant, had, while the defendant ran 700 yards and climbed three fences, two of which the deceased also climbed, so far overtaken the defendant that he was close enough, just prior to the defendant’s climbing the last fence, to strike at him; that defendant was a man of medium size, 49 years of age, and the deceased was a very large man, well proportioned, and 23 years of age; that the shots were fired in rapid succession from a pump shotgun, and many shot were found in the body of the deceased.
 

 The evidence thus not only takes the deceased and his father, at the time of the shooting, out of the class against whom the threat was directed, if made, but the long flight, under the circumstances, precludes any reasonable inference that the shooting was in furtherance of an intention formed at or prior to the time of making the threat; there being no evidence in the case, nor theory entertained by counsel for the state, that the flight of the defendant was staged or made for any purpose other than to escape from the assault and impending injury, and the same facts preclude any reasonable inference
 
 *566
 
 that the shooting occurred by reason or because of the unfriendly relationship. So that the evidence of deliberation and premeditation, if found at all, must be found in the testimony of the defendant himself and in his confession; and, if there found, it must be inferred from the fact that he fired the second and third shots, or the third shot, since the firing of the first shot was clearly in self-defense and justifiable.
 

 The repeated warnings by the defendant to the deceased that, if he did not cease the pursuit, he would have to shoot him, considered in the light of the length of the retreat, do not give rise to a reasonable inference of deliberate and premeditated malice to kill, but, rather, if believed, tended to prove that the defendant desired not to kill, and gave rise to a reasonable inference that at each retreating step the defendant was becoming more and more convinced of the futility of further retreat.
 

 In making the above deductions from the evidence, necessarily we must weigh the evidence. The Court of Appeals was entitled to make its own deductions from the evidence, and may have made deductions different from the above. Hence we must .test its conclusion, from the standpoint of believing all of the evidence of the state and all of the evidence of the defense that was unfavorable to the defendant, and of disbelieving all the evidence of the defense that was favorable to the defendant. So considering it, we have the state proving all the circumstances as above detailed, except the denial of the threat, the conversation between the defendant and the deceased during the flight, and the claim of the defendant that he had traps out in that locality. We
 
 *567
 
 have in addition thereto the testimony of the father of the deceased that the defendant was at the time stealing his and the decedent’s traps, and we have the admission of the defendant that he fired at the deceased three times, in rapid succession, and that the last shot was fired after the deceased was down —presenting a case of firing at least the first shot in self-defense, followed immediately by the firing of two other shots, one of which was clearly unjustifiable, but under circumstances, with reference to which there is no dispute, which preclude an opportunity to deliberate and premeditate, unless it may be assumed, without any evidence or circumstance to support such assumption, that the flight was staged for the purpose of making the killing appear to be in self-defense. The evidence of the threat, under any other theory, in our judgment did not tend to prove anything in relation to the shooting, and would not support even an inference of deliberation and premeditation. But if upon that theory or any other it does arise to the dignity of ‘£ some evidence,” as the Court of Appeals concluded it did, it did not attain to a degree of proof beyond a reasonable doubt; it being the duty of the Court of Appeals, upon a review of the weight of the evidence, to determine whether the proof was of the degree which the character of the case required. A conclusion that there was “some evidence” did not meet that requirement.
 

 This court has announced this duty in a number of cases, as follows:
 

 Potter
 
 v.
 
 Potter, Exrx.,
 
 27 Ohio St., 84: “ Clear and convincing proof is required to warrant the reformation of a written instrument on the ground of
 
 *568
 
 mistake, and when it clearly appears that this rule has been disregarded in reforming an instrument, and the finding of the court can be sustained only upon the supposition that it regarded the law as requiring nothing more than a mere preponderance of evidence to warrant a finding sustaining the alleged mistake, a reviewing court, on error, may reverse the judgment based on such finding.”
 

 Ford
 
 v.
 
 Osborne,
 
 45 Ohio St., 1, 12 N. E., 526: “Where the affirmative of the issue in a civil action requires clear and convincing proof to sustain it, and it is claimed that the rule has been disregarded, this court may, where it is all set forth in a bill of exceptions, review the evidence, for the purpose of determining if the rule has been regarded. ’ ’
 

 Cole
 
 v.
 
 McClure,
 
 88 Ohio St., 1, 102 N. E., 264: ‘ ‘ On review of the record of a trial below, this court will not consider the mere weight of the evidence; but, where the law requires in the particular case a higher quality and quantity of evidence than is sufficient in ordinary cases to support a judgment by the preponderance of proof, this court will consider whether the evidence attains to that high degree of probative force and certainty.”
 

 Frate
 
 v.
 
 Rimenik,
 
 115 Ohio St., 11, 152 N. E., 14: “In order to maintain an action for reformation of a deed upon the ground of mutual mistake of parties thereto, the proof of such mutual mistake must .be clear and convincing; a preponderance of the evidence only is not sufficient. This court, while not required generally to weigh the evidence, will examine the record to see whether the court below has acted upon the requisite degree of proof.”
 

 In the criminal case of
 
 Atkins
 
 v.
 
 State,
 
 115 Ohio
 
 *569
 
 St., 542, 155 N. E., 189: “Ordinarily this court will not consider the mere weight of evidence on review of the record of a trial below, yet, this case being one where the law requires a higher quality and a greater quantity of evidence than is required in ordinary cases where a verdict is supported by a preponderance of the proof, this court will look to the record to ascertain whether or not the rule has been disregarded. ’ ’
 

 Although this court is not required to pass upon the weight of the evidence, it necessarily follows that, if it is its duty, when it does elect to review the evidence to determine whether the trial court has observed the correct rule in weighing the evidence, to reverse when it finds that it has not, it is likewise the duty of the Court of Appeals, which is obliged to pass upon the weight of the evidence when its jurisdiction in that respect is invoked, to determine whether the proof attains to the degree which the character of the case requires, and to render its judgment according to such determination. The duty of the Court of Appeals in such a situation cannot be less than the duty of this court.
 

 The Court of Appeals, in reviewing a criminal case upon the weight of the evidence, owes a greater duty than to determine merely whether there was “some evidence” tending to support the verdict. In such situation, if the Court of Appeals is unable to determine from the record wherein the truth lies between conflicting evidence, it may well adopt the conclusion of the jury and the trial court; they being in a better situation to judge of the truth by reason of their opportunity to see the witnesses and observe their conduct. But where the truth is manifest upon
 
 *570
 
 the record itself, by reason of the absence of conflict, or by any other sound reason, the Court of Appeals cannot escape its duty to determine whether the verdict and/or judgment is supported by the degree of proof which the character of the case requires.
 

 Breese
 
 v.
 
 State, supra,
 
 was a case where the evidence of the state was circumstantial, and there was not only a sharp conflict between the evidence of the state and that of the defense, as to the circumstances, but also a discredited and unconvincing explanation made by the accused of his possession, after the burglary, of a portion of the goods stolen, so that, to arrive at a verdict at all, it was necessary for the jury to determine wherein the truth lay between conflicting testimony — to believe the testimony of certain witnesses and wholly disbelieve the testimony of certain other witnesses — and by that process to reach a conclusion beyond a reasonable doubt that the accused was guilty, and so render its verdict. This court very properly held that the jury and the trial court were in a better position to determine what testimony was true and what testimony was not true; and in that respect it would not substitute its judgment for the judgment of the jury and the trial court.
 

 The instant case presents a situation where the Court of Appeals was called upon to determine whether there was proof beyond a reasonable doubt, if it believed all of the evidence of the state and disbelieved all of the evidence of the defense favorable to the defendant; and, so considering it, that court was in doubt as to whether the element of deliberation and premeditation had been proven by
 
 *571
 
 the degree of proof required iu criminal cases, and, being in doubt, its duty was to reverse and remand. This court will enter the judgment which the Court of Appeals ought to have entered.
 

 Judgment reversed and cause remanded.
 

 Kinkade, Jones, Matthias, Day and Allen, JJ., concur.