This appeal is brought by Sash Storm, Inc. from the decision and judgment entry of the Court of Common Pleas, Allen County, ordering the reformation of a deed based on a finding of a mutual mistake.
The record presents the following facts. On January 10, 1996 plaintiff-appellant Greg Music (d.b.a. All Seasons Heating Air Conditioning Co.) and defendant-appellee Sash Storm, Inc. entered into a lease agreement whereby Music leased four parcels of land from Sash 
Storm. The lease agreement contained the following description of the property commonly referred to as 125 E. Kibby Street, Lima, Ohio:
 Inlot No. 1979, except for fifty feet on the west end of said lot;
 Inlot No. 1980, except for fifty feet on the west end of said lot;
 Inlot No. 1981, except for fifty feet on the west end of said lot; and
 All of Inlot 1982
Subsequently, Music began operating his heating and air conditioning business on the property, utilizing the buildings located on the property identified as building's B and C on Plaintiff's Exhibit One. Building C is a warehouse and is located entirely on the eastern portion of lot 1982. Building B contains office space and is situated on the western portion of lot 1982 and lot 1981.
The parties amended the lease agreement in 1997 giving Music an option to purchase the property for $52,000.00 and in early 2000, Music informed Sash Storm that he intended to exercise the option. On August 9, 2000, Music tendered $52,000.00 to Sash Storm who thereafter tendered a Warranty Deed to Music. The deed contained a description of the property identical to the description contained on the lease agreement.
Sometime after the completion of the sale, Music became aware that the legal description of the property, as contained in the lease agreement and on the warranty deed, severed Building B in half, thereby granting him an ownership interest in only the northern fifty feet of the building. Music approached Sash Storm in an attempt to correct the error but Sash Storm refused to cooperate. Thereafter, Music filed a Complaint in the Court of Common Pleas, Allen County requesting an order for specific performance compelling Sash Storm to conform with the original intent of the lease agreement and contract for sale.
The matter came to trial on September 20, 2001 at which time both parties admitted that the property description was a mutual mistake. However, the parties disagreed as to what that mistake was. Music testified that it was always the intention of the parties that the lease and the subsequent sale include all of Building B. Defendant-Appellant James DeVita, president and majority shareholder of Sash Storm, testified that he never intended to lease or sell any portion of Building B to Music.
After the presentation of evidence the trial court visited the property at 125 E. Kibby Street. On October 2, 2000 the trial court issued a Decision and Judgment Entry concluding that plaintiff-appellee Music had proven by clear and convincing evidence that it was the actual intent of the parties that the lease and the deed include Building B in its entirety. It is from this order that Appellant now appeals.
Appellant raises the following assignment of error:
 The Trial Court erred in finding that plaintiff proved by clear and convincing evidence that the parties had made a mutual mistake and that as a result reformation of their contract was warranted.
The reformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties. Greenfield v. Aetna Cas. Sur. Co. (1944),75 Ohio App. 122, 128. Reformation of a contract based on mutual mistake is proper when the parties made the same mistake and understood the contract as the party seeking reformation alleges. Hastings MutualInsurance Co., v. Warnimont (Feb. 15, 2001), Hancock App. No. 5-2000-22,unreported (citing Snedegar v. Midwestern Indemn. Co. (1988),44 Ohio App.3d 64, 69.)
Likewise, reformation of a deed is available upon a showing that both parties were mistaken as to what was being conveyed. Stewart v. Gordon
(1899), 60 Ohio St. 170. The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence. Frate v.Rimenik (1926), 115 Ohio St. 11, 152 N.E. 14, paragraph one of the syllabus. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469. In order to determine the intent of the parties, courts may consider the parties' course of dealing and or other parol evidence. Castle v. Daniels (1984), 16 Ohio App.3d 209, 212-213. In the case at bar, Sash Storm argues that the trial court's decision is not supported by clear and convincing. We disagree.
It is undisputed that the description of the property on the lease agreement is identical to the description of the property on the warranty deed. It is also undisputed that neither party intended Building B to be split in half either by lease or conveyance. The parties do not dispute that the property description on both the lease and the deed is the result of a mutual mistake. The only disputed issue is whether theexclusion of half of the building was a mistake, as argued by plaintiff-appellee Music, or whether the inclusion of half of the building was a mistake, as argued by appellant-defendant Sash and Storm.
The trial court determined that the mutual mistake was the exclusion of half of the building and the record supports this finding. After signing the original lease agreement in 1996, Music took control of Building B and kept control of the building for over four years. Music testified at trial that he was given keys to the building and provided for the building's utilities, maintenance and repair. In addition, Music testified that he was the sole occupant of the building and owned all of the property in the building.
Furthermore, Music testified that just before the lease expired, but after he had notified Sash Storm that he would be exercising his option to buy, he approached James DeVita about problems with Building B's roof. According to Music, DeVita told him that the repair was now his responsibility since the building would be his in a few months anyway. It is undisputed that Music spent $4,600.00 to repair the roof.
James DeVita, president of Sash Storm, testified that he acquiesced to Music's presence in Building B since Music "was already in there." DeVita did not explain how or why Music was issued keys or allowed to move in to the building in the first place. DeVita admitted that he had not been inside of Building B since the inception of the lease in 1996. DeVita denied telling Music to repair the building. Furthermore, at one point, DeVita claimed that Sash Storm only meant to lease a portion of Building B to Music completely contradicting his other testimony not to mention Sash Storm's current argument in this appeal.
By finding that plaintiff-appellee Music had met his burden of proof, the trial court implicitly made a finding that Music's testimony was more credible. As the Second District Court of Appeals pointed out inCastle, supra, 16 Ohio App.3d at 212:
 "Although the credibility of the various witnesses is certainly a factor in this case, it is not the function of a reviewing court to weigh that credibility. It is for trial court to make that determination. We are obligated to give due deference to the trial court in these matters. Consequently we must affirm the trial court judgment where supported by the evidence."
The record supports the trial court's finding that the parties intended building B to be a part of the lease and the later conveyance. Therefore, reformation was proper. For the reasons stated it is the order of this Court that the judgment of the Court of Common Pleas, Allen County is hereby affirmed.
Judgment Affirmed.
SHAW, P.J., and HADLEY, J., concur.