[Cite as *In re: M. H.*, 2018-Ohio-2973.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
|  | **JUDGES:** |
| IN RE: | Hon. John W. Wise, P. J. |
|  | Hon. William B. Hoffman, J. |
|  | Hon. Earle E. Wise, Jr., J. |
|  |  |
| M.H. | Case No. 18 COA 013 |
|  |  |
| A MINOR CHILD | <u>O P I N I O N</u> |

CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 20173002

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      July 27, 2018

APPEARANCES:

For Plaintiff-Appellant Mother

EMILY M. BATES
46 West Main Street
Ashland, Ohio 44805

For Defendant-Appellee

CHRISTOPHER R. TUNNELL
PROSECUTING ATTORNEY
JOSHUA T. ASPIN
ASSISTANT PROSECUTOR
110 Cottage Street, Third Floor
Ashland, Ohio 44805

*Wise, John, P. J.*

{¶ 1}   Appellant-Mother, J.H., appeals the February 2, 2018, Judgment Entry of the Court of Common Pleas of Ashland County, Ohio, Juvenile Division, granting permanent custody of her minor child to Appellee Ashland County Child Protective Services.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On November 13, 2014, M.H., (age one-year old) and his sibling C.H. (four-years old) were removed from the home of their mother by Children Services pursuant to an Ex Parte Order. A shelter care hearing was held in Ashland County Common Pleas Court, Juvenile Division, and said children were placed in the temporary custody of Appellee Ashland County Department of Job and Family Services, Children Services Division ("Children Services"). (11/18/14 Judgment Entry).

{¶ 3}   Also, on November 13, 2014, Children Services filed a complaint alleging that M.H. is a dependent child and sought temporary custody of him to Children Services.

{¶ 4}   The minor child, M.H. was born on July 2, 2013, to father, J.H., and mother J.H.  Mother is the Appellant in the case at bar. A seven year-old sibling of M.H., C.H., was also adjudicated dependent under the facts of this case, but is not a subject of this appeal. The sibling C.H. suffers from autism, and Mother had indicated at the commencement of the permanent custody hearing that she believed that permanent custody was in C.H.'s best interest. The children's mother, J.H., suffers from mental health and cognitive limitations resulting from a traumatic brain injury. (T.at 79).

{¶ 5}   On January 29, 2015, an Amended Complaint was filed alleging that M.H. was a dependent child, including additional allegations. After an adjudicatory hearing on

January 27, 2015, said child was found dependent pursuant to section 2151.04(C) of the Ohio Revised Code. (1/29/15 Mag. Dec.).

{¶ 6} On February 3, 2015, the court heard evidence on disposition. The court found it in the best interest of M.H. to be placed in the temporary custody of Children Services and decided accordingly. (2/13/15 Mag. Dec.; 2/27/15 J.E.). On November 25, 2015, following a hearing, the court issued an order extending temporary custody for six months. On August 18, 2016, Children Services filed a motion seeking Permanent Custody of the sibling C.H., due in part to C.H.'s special needs. On August 1, 2016 Children Services filed a Motion requesting that M.H. be reunited with his mother.

{¶ 7} The children have resided in foster care home since their removal from the home, except for two short time periods. The first instance was when the children were attempted to be placed with grandparents, and the second when M.H. was placed with Appellant-Mother in December, 2016.

{¶ 8} The concerns in this case included the Mother's cognitive abilities and mental health needs, including the stresses of caring for C.H., a severely autistic child. The initial issues included home conditions and Mother's being overwhelmed with the children's needs such that she resorted to restraining them in a stroller and Pack-n-Play with shoelace material. (T at 249). Additional concerns included the mother's inability to focus and remain on task while caring for herself and the physical, educational, and medical needs of the children. (T. at 252-255, 257).

{¶ 9} Appellant-Mother has cooperated and completed case plan objectives as requested by Children Services. The case plan included parenting education classes and mental health counseling for PTSD, depression, and anxiety. (T. at 259, 261).

Reunification had been the agency's goal and was attempted when M.H. was placed in Mother's home on December 2, 2016, on a trial basis. (T. at 277).

{¶ 10} On December 9, 2016, Caseworker Perkins visited the home for an announced visit. *Id.* M.H. was observed acting like a dog. (T. at 278). During this visit, the caseworker discussed the possibility of enrolling M.H. in preschool. *Id.* No concerns were noted for that visit. *Id.*

{¶ 11} On December 19, 2016, the Caseworker made an unannounced visit to the home. *Id.* She observed that the home was dirty, very cluttered, and that Mother was babysitting for a one-year old child. (T. at 279). The Caseworker explained to Mother that the home needed to be better maintained. *Id.*

{¶ 12} On January 12, 2017, the Caseworker again made contact following reports concerning deplorable home conditions and medical issues with M.H. (T. at 280-282). During the visit on January 12, 2017, the Caseworker observed that Mother appeared unkempt and unbathed, the apartment extremely dirty and had an odor of "rancid vomit". (T. at 284, Jan. 30, 2018 J/E at 11 ¶35). She observed that there was trash everywhere and curdled food in dishes. *Id.* Mother blamed the conditions on having recently had dental work done, on caring for an unrelated one-year old child, on her live-in boyfriend, on Children Services, and on four-year old M.H. (T. at 286). Also, while the Caseworker was present at the home on January 12, 2017, she observed that M.H. continued to act like a dog throughout the visit by crawling around on the floor, picking up things with his mouth and barking. (T. at 297).

{¶ 13} The Guardian Ad Litem confirmed the Caseworkers observation, finding the home to have deteriorated substantially between visits. (Jan. 30, 2018 J/E at 11 ¶36)

The GAL observed a strong odor, garbage, trash cans overflowing, dirty dishes, trash strewn everywhere. *Id.* The GAL also stated that she was unable to speak with M.H. because he was acting like a dog and would not talk. *Id.*

{¶ 14} When the Caseworker inquired about reports of M.H. having headaches, Mother claimed that she took him to a doctor, and that M.H. had an ear infection. (T. at 290). However, Mother could not recall which doctor he saw or when she took him. (T. at 289). The Caseworker was later unsuccessful in verifying whether M.H. had seen any doctor. Id. Mother also admitted that she was caring for the one-year old daily and not only a couple days per week as she had previously stated to the Caseworker in December. (T. at 291-292).

{¶ 15} On January 19, 2017, Children Services filed a motion seeking permanent custody of M.H. This change in the requested disposition was due to continued issues that arose during M.H.'s placement in Mother's home, which only became known in mid-January, 2017. The hearing on permanent custody was held on multiple days in 2017.

{¶ 16} On February 2, 2018, the Court filed a Judgment Entry granting Children Services permanent custody of M.H.

{¶ 17} Appellant-Mother now appeals, assigning the following error for review:

## ASSIGNMENT OF ERROR

{¶ 18} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**I.**

**{¶ 19}** Appellant herein argues the trial court erred in awarding Appellee permanent custody of the minor child. We disagree.

**{¶ 20}** As stated by this Court in *In the Matter of: S.W.,* 5th Dist. Stark No. 2016CA00221, 2017-Ohio-807, ¶12:

> [T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶ 21}** An award of permanent custody must be based upon clear and convincing evidence. R.C. §2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### *Standard of Review*

**{¶ 22}** The Ohio Supreme Court has delineated our standard of review as follows:

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik*, 115 Ohio St. 11, 152 N.E. 14. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954).

**{¶ 23}** A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins*, 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**{¶ 24}** In *Cross*, the Supreme Court further cautioned:

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of*

*facts may determine what should be accepted as the truth and what should be rejected as false. See Rice v. City of Cleveland, 114 Ohio St. 299, 58 N.E.2d 768. Cross, 161 Ohio St. at 477-478. (Emphasis added).*

***Requirements for Permanent Custody Awards***

**{¶ 25}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶ 26}** Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's

parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 27} Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

***Parental Placement within a Reasonable Time – R.C. §2151.414(E)(1).***

**{¶ 28}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. §2151.414(E). The statute also indicates that if the court makes a finding under R.C. §2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. §2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

**{¶ 29}** R.C. §2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(10) The parent has abandoned the child.

\*\*\*

(16) Any other factor the court considers relevant.

{¶ 30} R.C. §2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶ 31} In this case, the trial court made its permanent custody findings pursuant to R.C. §2151.414(E)(1) and/or (16), since Mother had not remedied the conditions which led to M.H.'s removal and Mother was also unable to meet the special needs of the child.

{¶ 32} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶ 33} In the case *sub judice*, the trial court found by clear and convincing evidence that M.H. had been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period pursuant to R.C. §2151.414(B)(1)(d).

**{¶ 34}** This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

**{¶ 35}** However, even if we consider Mother's arguments, we find the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable period.

**{¶ 36}** Based upon the foregoing, as well as the entire record in this case, the court properly found M.H. could not or should not be returned to Mother within a reasonable time.

### *Best Interests – R.C. §2151.414(D)(2)(a) – (d)*

**{¶ 37}** Here, the trial court found, pursuant to R.C. §2151.414(E) that granting permanent custody to the Agency was in the best interest of the minor child.

**{¶ 38}** The trial court found that while the evidence demonstrated the Mother has been compliant with her case plan, the conditions which led to M.H being removed from the home have not been remedied. Despite offering numerous services, Mother is unable to mitigate the concerns that led to the child's removal. Mother has a traumatic brain injury, which through no fault of her own, has caused the problems evident in this case. During the short trial period when the child was placed back in Mother's home, M.H. regressed in almost every way. (JE at 19-20). Reasonable efforts were made by the Agency, but attempts at reunification failed. (JE at 21).

**{¶ 39}** The court found that M.H., while bonded with Mother, is also bonded with his foster mother with whom he has resided for most of his life. (J/E at 19). The court found that father has abandoned the minor child, as defined in R.C. 2151.414(E)(10).

**{¶ 40}** The court found that M.H. has a great and immediate need for a legally secure placement. (JE at 20).

**{¶ 41}** In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

### *Conclusion*

**{¶ 42}** For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶ 43}** We further find that the trial court's decision that permanent custody to Children's Services was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶ 44}** Additionally, based on the foregoing, this Court finds that the trial court's application of R.C. §2151.414 was not in error.

**{¶ 45}** Because the evidence in the record supports the trial court's judgment, we overrule Mother's assignment of error, and affirm the decision of the Court of Common Pleas, Juvenile Division, Ashland County, Ohio.

By: Wise, John, P. J.

Hoffman, J., and

Wise, Earle, J., concur.

JWW/d 0717